UNITED STATES OF AMERICA
UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

BLAKE DANIEL HULLIHEN,

                    Petitioner,                Case No. 1:16-cv-1282

v.                                      Honorable Paul L. Maloney

PAUL KLEE,

                    Respondent.
_____/

## **OPINION**

This is a habeas corpus action brought by a state prisoner pursuant to 28 U.S.C. § 2254. Promptly after the filing of a petition for habeas corpus, the Court must undertake a preliminary review of the petition to determine whether "it plainly appears from the face of the petition and any exhibits annexed to it that the petitioner is not entitled to relief in the district court." Rule 4, RULES GOVERNING § 2254 CASES; *see* 28 U.S.C. § 2243. If so, the petition must be summarily dismissed. Rule 4; *see Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970) (district court has the duty to "screen out" petitions that lack merit on their face). A dismissal under Rule 4 includes those petitions which raise legally frivolous claims, as well as those containing factual allegations that are palpably incredible or false. *Carson v. Burke*, 178 F.3d 434, 436-37 (6th Cir. 1999). After undertaking the review required by Rule 4, the Court concludes that the petition must be dismissed because it fails to raise a meritorious federal claim.

**Factual Allegations**

Petitioner Blake Daniel Hullihen presently is incarcerated at the Gus Harrison Correctional Facility.  Following a jury trial in the Osceola County Circuit Court, Petitioner was convicted of two counts of second-degree murder, MICH. COMP. LAWS § 750.317, and two counts of possessing a firearm during the commission of a felony (felony firearm), MICH. COMP. LAWS § 750.227b.  On March 1, 2013, the trial court sentenced him to two prison terms of 37 to 75 years on the murder convictions, and two consecutive terms of 2 years on the felony-firearm convictions.

The Michigan Court of Appeals described the underlying facts as follows:

This case arises out of the shooting deaths of Gabrielle Woodworth and Donald Feneis.  Woodworth was defendant's former girlfriend and the mother of his daughter, and Feneis was Woodworth's boyfriend at the time of the shooting.  Both victims were shot when they met with defendant at a Chuck's Corners gas station that had been the exchange point for defendant and Woodworth when transferring custody of their daughter.  Woodworth was expecting to pick up her daughter at the time, but defendant had not b[r]ought her with him to that location.  Defendant admitted to shooting both victims, but argued that he acted in self-defense.

Defendant testified that Woodworth began yelling at him when he told her that he had not brought his daughter.  Defendant further testified that Feneis exited his truck and "then him basically screaming at me, he's going to kill me."  Defendant testified it was cold and dark and there were no lights on that portion of the gas station.  He said Woodworth and Feneis "were coming towards me a little bit; I was backing up."  Defendant testified that Feneis pulled something "shiny" and "black" out of his pocket:

> Q.   Okay.   Once you see Mr. Feneis pull his hands out of his pockets, what do you do?
>
> A.   At that point, I just – I snapped or something, and instinct took over, and I swear it was a gun –
>
> Q.   Okay.
>
> A.   – and I pulled mine –

-2-

Q.      What did you do?

A.      I pulled my side arm and started shooting.

When asked about the object from the pocket, defendant testified he "didn't know what it was for sure."

Defendant did not remember who he shot or how many bullets he fired.  Nor did he recall Woodworth falling to the ground and Feneis running away from him. He testified that when Feneis turned toward him, he "started shooting again" because he "thought [Feneis] still had a gun."  When Feneis fell to the ground, defendant testified he backed away to his truck.  He then left and headed back to his parents' home, where he told his father he had shot two people who had attacked him. Defendant's father accompanied him when he turned himself in to police.

Evidence was presented at trial that Woodworth was shot eight times, including a total of five gunshot wounds to her face and neck.  Woodworth was also shot three times in the torso.  Feneis was shot eleven times, including three times in the head and six times in the torso.  Defendant's gun's magazine had an eight-round capacity and could carry one round in the chamber.

An eyewitness, Penny Savage, testified that she heard the gunshots and saw defendant shoot a man as he ran toward the store.  She then testified that defendant inserted a new magazine in his gun and "very methodically walked up and emptied it" into the man's body lying on the ground.  The eyewitness also testified that she did not hear any argument or altercation before the shooting started, and that defendant ran over the woman's body with his truck as he left the scene.  Another eyewitness, Carl Asher, testified that he heard the gunshots, did not hear any argument or altercation beforehand, and saw the shooter drive off.

Defendant testified that Feneis had previously threatened him when he dropped off or picked up his daughter with Woodworth.  He testified that Feneis said that his friends would come to his house, "get" him, and kill him.  Defendant's father testified that he was present when Feneis threatened defendant, including a time when Feneis and his father told defendant something like "this is Osceola County and out here we live way back here in the country in this farm, we can bury your butt and no one will ever find you."  Defendant and his father admitted that defendant had never been assaulted, nor had they seen a weapon displayed, prior to the occasion of the shooting.  Defendant testified that he left his daughter at home and drove to Chuck's Corners on the day of the shooting to talk to Woodworth about keeping his daughter longer.

*People v. Hullihen*, No. 315371, 2014 WL 2158149, at **1-2 (Mich. Ct. App. May 22, 2014).

-3-

Petitioner appealed his convictions and sentences to the Michigan Court of Appeals, raising five issues:

I.     IN A MURDER CASE THE MANSLAUGHTER INSTRUCTION IS REQUIRED WHERE (1) THERE IS A HISTORY OF THREATS TO KILL DEFENDANT; (2) DECEDENT PULLED A SMALL DARK OBJECT FROM HIS POCKET; (3) THE PROSECUTOR'S SUMMARY OF EVIDENCE TO THE JURY ARGUED FROM THE EVIDENCE THAT DEFENDANT WAS "PISSED"; (4) DEFENDANT'S FIRST STATEMENT AFTER THE SHOOTING WAS THAT "I JUST LOST IT AND STARTED SHOOTING AND SHOOTING"; (5) THERE WERE 17 SHOTS KILLING TWO PEOPLE; AND (6) DEFENDANT'S TESTIMONY WAS THAT "I SNAPPED OR SOMETHING, I SWEAR IT WAS A GUN."

II.    IN A SELF DEFENSE CASE BASED, INTER ALIA, ON UNCONTESTED EVIDENCE THAT ONE OF THE DECEASED PULLED A DARK OBJECT FROM HIS POCKET, FALSE ARGUMENT BY THE PROSECUTOR THAT THE[R]E WAS NO SELF DEFENSE BECAUSE THE DEFENDANT FIRST SHOT THE OTHER PE[]RSON, REQUIRES A NEW TRIAL.

III.   AT SENTENCING NO SPECIFIC []REASON AND FACTS W[E]RE A[RT]ICULATED TO JUSTIFY THE UPWARD DEPARTURE.

IV.    DEFENDANT'S SIXTH AND FOURTEENTH AMENDM[E]NT RIGHTS WERE VIOLATED BY JUDICIAL FACT FINDING WHICH INCREASED THE FLOOR OF THE PERMISSIBLE SENTENCE IN VIOLATION OF ALLEYNE V UNITED STATES, 133 S CT 2151 (2013).

V.     DEFENSE COUNSEL'S FAILURE TO MAKE PROPER OBJECTIONS AND RECORD WAS CONSTITUTIONALLY INEFFECTIVE ASSISTANCE OF COUNSEL.

(Attach. A to Pet., ECF No. 1-1, PageID.16.)  In an opinion issued on May 22, 2014, the court of appeals affirmed the convictions and sentences.

Petitioner sought leave to appeal to the Michigan Supreme Court, raising the same five grounds presented to the court of appeals, together with two new grounds:

V.     I WAS DENIED EFFECTIVE ASSISTANCE OF COUNSEL BECAUSE MY ATTORNEY REFUSED TO/FAILED TO INVESTIGATE A MERITORIOUS INSANITY DEFENSE.

VII.    A PARTY MAY MOVE FOR A NEW TRIAL ON THE BASIS OF NEW EVIDENCE.

(Attach. B to Pet., ECF No. 1-1, PageID.17.)  On February 3, 2015, the supreme court ordered that the case be held in abeyance pending that court's resolution of *People v. Lockridge*, No. 149073. *See People v. Hullihen*, 858 N.W.2d 445 2015).  On October 28, 2015, the supreme court denied leave to appeal, concluding that Petitioner had failed to establish the threshold showing of plain error under *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015).  *See People v. Hullihen*, 870 N.W.2d 708 (Mich. Oct. 28, 2015).

Petitioner filed the instant habeas application on or about October 26, 2016.[1]  In his application, he raises the seven issues presented to the Michigan Supreme Court.  In an opinion and order issued on December 19, 2016 (ECF Nos. 4, 5), the Court held that Grounds VI and VII were not properly exhausted.  The Court ordered that, if Petitioner wished to proceed in this action on his unexhausted claims, he should show cause within 28 days why he was entitled to a stay of the proceedings.  The Court advised Petitioner that, if he failed to respond in accordance with the order, the Court would consider only the five exhausted claims.  (*Id.*)

Because Petitioner did not respond to the Court's order, the Court will consider only Grounds I through V of the petition.

---

[1]Under Sixth Circuit precedent, the application is deemed filed when handed to prison authorities for mailing to the federal court.  *Cook v. Stegall*, 295 F.3d 517, 521 (6th Cir. 2002).  Petitioner dated his application on October 26, 2016, and it was received by the Court on October 31, 2016.  For purposes of this opinion, the Court has given Petitioner the benefit of the earliest possible filing date.  *See Brand v. Motley*, 526 F.3d 921, 925 (6th Cir. 2008) (holding that the date the prisoner signs the document is deemed under Sixth Circuit law to be the date of handing to officials) (citing *Goins v. Saunders*, 206 F. App'x 497, 498 n.1 (6th Cir. 2006)).

## **Standard of Review**

The AEDPA "prevents federal habeas 'retrials'" and ensures that state court convictions are given effect to the extent possible under the law. *Bell v. Cone*, 535 U.S. 685, 693-94 (2002). The AEDPA has "drastically changed" the nature of habeas review. *Bailey v. Mitchell*, 271 F.3d 652, 655 (6th Cir. 2001). An application for writ of habeas corpus on behalf of a person who is incarcerated pursuant to a state conviction cannot be granted with respect to any claim that was adjudicated on the merits in state court unless the adjudication: "(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established federal law as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based upon an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." 28 U.S.C. § 2254(d). This standard is "intentionally difficult to meet." *Woods v. Donald*, 575 U.S. __, 135 S. Ct. 1372, 1376 (2015) (quotation marks omitted).

The AEDPA limits the source of law to cases decided by the United States Supreme Court. 28 U.S.C. § 2254(d). This Court may consider only the "clearly established" holdings, and not the dicta, of the Supreme Court. *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez v. Smith*, 135 S. Ct. 1, 3 (2014); *Bailey*, 271 F.3d at 655. Moreover, "clearly established Federal law" does not include decisions of the Supreme Court announced after the last adjudication of the merits in state court. *Greene v. Fisher*, 132 S. Ct. 38 (2011). Thus, the inquiry is limited to an examination of the legal landscape as it would have appeared to the Michigan state courts in light of Supreme Court precedent at the time of the state-

court adjudication on the merits.  *Miller v. Stovall*, 742 F.3d 642, 644 (6th Cir. 2014) (citing *Greene*, 132 S. Ct. at 44).

A federal habeas court may issue the writ under the "contrary to" clause if the state court applies a rule different from the governing law set forth in the Supreme Court's cases, or if it decides a case differently than the Supreme Court has done on a set of materially indistinguishable facts.  *Bell*, 535 U.S. at 694 (citing *Williams*, 529 U.S. at 405-06).  "To satisfy this high bar, a habeas petitioner is required to 'show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.'"  *Woods*, 135 S. Ct. at 1376 (quoting *Harrington v. Richter*, 562 U.S. 83, 103 (2011)).  In other words, "[w]here the precise contours of the right remain unclear, state courts enjoy broad discretion in their adjudication of a prisoner's claims."  *White v. Woodall*, 572 U.S. ___, 134 S. Ct. 1697, 1705 (2014) (quotations marks omitted).  The court may grant relief under the "unreasonable application" clause "if the state court correctly identifies the governing legal principle from our decisions but unreasonably applies it to the facts of the particular . . . case."  *Williams*, 529 U.S. at 407.  A federal habeas court may not find a state adjudication to be "unreasonable" "simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly."  *Id.* at 411; *accord Bell*, 535 U.S. at 699.  Rather, the issue is whether the state court's application of clearly established federal law is "objectively unreasonable."  *Id.* at 410.  "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no

'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

Where the state appellate court has issued a summary affirmance, it is strongly presumed to have been made on the merits, and a federal court cannot grant relief unless the state court's result is not in keeping with the strictures of the AEDPA. *See Harrington*, 562 U.S. at 99; *see also Johnson v. Williams*, 133 S. Ct. 1088, 1094 (2013); *Werth v. Bell*, 692 F.3d 486, 494 (6th Cir. 2012) (applying *Harrington* and holding that a summary denial of leave to appeal by a Michigan appellate court is considered a decision on the merits entitled to AEDPA deference). The presumption, however, is not irrebuttable. *Johnson*, 133 S. Ct. at 1096. Where other circumstances indicate that the state court has not addressed the merits of a claim, the court conducts *de novo* review. *See id.* (recognizing that, among other things, if the state court only decided the issue based on a state standard different from the federal standard, the presumption arguably might be overcome); *see also Harrington*, 562 U.S. at 99-100 (noting that the presumption that the state-court's decision was on the merits "may be overcome when there is reason to think some other explanation for the state court's decision is more likely"); *Wiggins v. Smith*, 539 U.S. 510, 534 (2003) (reviewing habeas issue *de novo* where state courts had not reached the question).

The AEDPA requires heightened respect for state factual findings. *Herbert v. Billy*, 160 F.3d 1131, 1134 (6th Cir. 1998). A determination of a factual issue made by a state court is presumed to be correct, and the petitioner has the burden of rebutting the presumption by clear and convincing evidence. 28 U.S.C. § 2254(e)(1); *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003); *Bailey*, 271 F.3d at 656. This presumption of correctness is accorded to findings of state

appellate courts, as well as the trial court.  *See Sumner v. Mata*, 449 U.S. 539, 546 (1981); *Smith v. Jago*, 888 F.2d 399, 407 n.4 (6th Cir. 1989).

## Discussion

I.   Grounds I:  Failure to Give Manslaughter Instruction

In his first ground for habeas relief, Petitioner argues that he was entitled on the facts of the case to a jury instruction on voluntary manslaughter.  The Sixth Circuit Court of Appeals, sitting en banc, has held that the failure to give an instruction on a lesser-included offense, even when requested by counsel, is not of the "character or magnitude which should be cognizable on collateral attack."  *Bagby v. Sowders*, 894 F.2d 792, 797 (6th Cir. 1990) (en banc).  The *Bagby* Court held that failure to instruct on lesser-included offenses in a noncapital case is reviewable in a habeas corpus action only if the failure results in a miscarriage of justice or constitutes an omission inconsistent with the rudimentary demands of fair procedure.  *Id.*; *accord Tegeler v. Renico*, 253 F. App'x 521, 524 (6th Cir. 2007); *Todd v. Stegal*, 40 F. App'x 25, 28-29 (6th Cir. 2002); *Scott v. Elo*, 302 F.3d 598, 606 (6th Cir. 2002); *Campbell v. Coyle*, 260 F.3d 531, 541 (6th Cir. 2001); *Samu v. Elo*, 14 F. App'x 477, 479 (6th Cir. 2001); *Williams v. Hofbauer*, 3 F. App'x 456, 458 (6th Cir. 2001).  Shortly after the Sixth Circuit decision in *Bagby*, the Supreme Court emphasized that the fact that an instruction was allegedly incorrect under state law is not a basis for habeas relief.  *Estelle v. McGuire*, 502 U.S. 62, 71-72 (1991) (citing *Marshall v. Lonberger*, 459 U.S. 422, 438 n. 6 (1983)).  Instead, the only question on habeas review is "whether the ailing instruction by itself so infected the entire trial that the resulting conviction violates due process."  *Id.* at 72 (quoting *Cupp v. Naughten*, 414 U.S. 141, 14 (1973)), *cited in Todd*, 40 F. App'x at 29.

Here, the failure to give a manslaughter instruction clearly does not amount to a miscarriage of justice or fundamental defect in due process.  Indeed, the court of appeals concluded that, based on the evidence, Petitioner had not demonstrated entitlement to the instruction under state law, as he did not claim that he acted in the heat of passion:

> Defendant then began firing at the two victims, not because he had lost control and was being ruled by his passions, but because, in his own words, "instinct took over." Defendant testified that he could "swear [the black object] was a gun" and that he continued shooting because he thought Feneis still had a gun. He also testified that he was not angry, but was "more scared."  Thus, by defendant's own words, his "ability to reason was not blurred by passion; his emotional state did not reach such a level that he was unable to act deliberately." *Pouncey*, 437 Mich. at 390.  Rather, as the trial court noted, defendant's testimony was that he responded with deadly force to a perceived threat of deadly force.

*Hullihen*, 2016 WL 2158149, at *3.  It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions.  *Bradshaw v. Richey*, 546 U.S. 74, 76 (2005); *Estelle*, 502 U.S. at 68.  The decision of the state courts on a state-law issue is binding on a federal court.  *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983).  Petitioner therefore fails to identify any miscarriage of justice.  Furthermore, no clearly established Supreme Court authority requires lesser-included offense instructions in non-capital cases.  Thus, under the AEDPA, 28 U.S.C. § 2254(d)(1), this claim is not a basis for habeas relief.  *Todd*, 40 F. App'x at 28 (citing *Estelle*, 502 U.S. at 71-72)).

## II.   Ground II:  Prosecutorial Misconduct

In his second ground for habeas relief, Petitioner argues that the prosecutor committed misconduct by arguing that, even if the second victim pulled something dark from his pocket, Petitioner was not entitled to the defense of self-defense, because Petitioner shot the first victim before the second victim took that action.

In order for a petitioner to be entitled to habeas relief on the basis of prosecutorial misconduct, the petitioner must demonstrate that the prosecutor's improper conduct "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" *Darden v. Wainwright*, 477 U.S. 168, 181 (1986) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 643 (1974)). "[T]he touchstone of due process analysis . . . is the fairness of the trial, not the culpability of the prosecutor." *Smith v. Phillips*, 455 U.S. 209, 219 (1982)). In the context of closing arguments, prosecutors "must be given leeway to argue reasonable inferences from the evidence." *Byrd v. Collins*, 209 F.3d 486, 535 (6th Cir. 2000) (quoting *United States v. Collins*, 78 F.3d 1021, 1040 (6th Cir. 1996)). In evaluating the impact of the prosecutor's misconduct, a court must consider the extent to which the claimed misconduct tended to mislead the jury or prejudice the petitioner, whether it was isolated or extensive, and whether the claimed misconduct was deliberate or accidental. *See United States v. Young*, 470 U.S. 1, 11-12 (1985). The court also must consider the strength of the overall proof establishing guilt, whether the conduct was objected to by counsel and whether a curative instruction was given by the court. *See id.* at 12-13; *Darden*, 477 U.S. at 181-82; *Donnelly*, 416 U.S. at 646-47; *Berger v. United States*, 295 U.S. 78, 84-85 (1935).

"Claims of prosecutorial misconduct are reviewed deferentially on habeas review." *Millender v. Adams*, 376 F.3d 520, 528 (6th Cir. 2004) (citing *Bowling v. Parker*, 344 F.3d 487, 512 (6th Cir. 2003)). Indeed, "[t]he Supreme Court has clearly indicated that the state courts have substantial breathing room when considering prosecutorial misconduct claims because 'constitutional line drawing [in prosecutorial misconduct cases] is necessarily imprecise.'" *Slagle v. Bagley*, 457 F.3d 501, 516 (6th Cir. 2006) (quoting *Donnelly v. DeChristoforo*, 416 U.S. 637, 645 (1974)). Thus, in order to obtain habeas relief on a prosecutorial misconduct claim, a habeas

petitioner must show that the state court's rejection of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker v. Matthews*, 132 S. Ct. 2148, 2155 (2012) (internal quotation omitted).

The Michigan Court of Appeals addressed the issue as follows:

Next, defendant argues that the prosecutor argued facts not in evidence when he stated that Woodworth was shot first. "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *People v. Abraham*, 256 Mich. App 265, 272; 662 NW2d 836 (2003). Issues of misconduct are decided case by case and reviewed in context. *Id.*

Prosecutors are "afforded great latitude regarding their arguments and conduct at trial. They are generally free to argue the evidence and all reasonable inferences from the evidence as it relates to their theory of the case." *People v. Unger*, 278 Mich. App 210, 236; 749 NW2d 272 (2008). However, a "prosecutor may not make a statement of fact to the jury that is not supported by evidence presented at trial and may not argue the effect of testimony that was not entered into evidence." *Id.* at 241. "Curative instructions are sufficient to cure the prejudicial effect of most inappropriate prosecutorial statements, and jurors are presumed to follow their instructions." *Id.* at 235 (citations omitted).

The prosecution's comment, challenged by defendant, is based on reasonable inferences from the evidence. In closing argument, the prosecution stated as follows:

So for whatever reason, he pumps a couple into Gabrielle, I don't know the order here, but he shoots her first, 'cause Donald is taking something out of his pocket, and then Donald takes off running and he's pumping shots into him from over here.

Additionally, during rebuttal argument, the prosecution stated "'Cause you know, you know the first [bullet] through her—it went through her. One of the first ones went through her chest and in the car door."

One testifying witness stated that defendant only fired two shots at Feneis before needing to reload. It can be inferred from this that defendant had previously fired before firing at Feneis. Therefore, it is a reasonable inference that these first shots were fired at Woodworth. Savage testified to hearing what sounded like firecrackers when she exited the main building of the gas station. She heard five

-12-

shots before entering her van, and four shots thereafter. She then saw the male victim running. He subsequently was shot and fell to the ground. Defendant then fired at him as he lay on the ground. As defendant was driving away, Savage saw him drive over another victim lying on the ground. It is reasonable to argue from this sequence of events that defendant had fired at Woodworth before pursuing and firing at Feneis. Several shots were fired prior to the shots Savage witnessed directed at Feneis. And another victim (presumably Woodworth) whom Savage did not see being shot at (presumably because the shots were fired before she exited the main building) was observed after the shooting ceased. The prosecution's comments were therefore reasonably related to the record evidence.

Additionally, the prosecution's comment was a proper response to counter defendant's self-defense theory. He did not dwell on the comment, but properly indicated to the jury a plausible order of events based on the evidence and how that would not square with defendant's theory of defense. The prosecution may argue from facts in evidence that defendant is not worthy of belief. *People v. Dobek*, 274 Mich. App 58, 67; 732 NW2d 546 (2007).

Finally, the court cured any possible prejudice stemming from the comment. The trial court instructed the jury that the "lawyers' statements and arguments are not evidence." The court also specifically instructed the jury that they will "decide what order shots may have occurred" and "how that scenario unfolded." It is for the jury, the court instructed, "to decide those facts based on the evidence, not based on arguments that the attorneys might have made." Given that "jurors are presumed to follow their instructions," any possible prejudice was cured by the court. *People v. Graves*, 458 Mich. 476, 486; 581 NW2d 229 (1998).

*Hullihen*, 2014 WL 2158149, at **3-4.

Although the state court did not directly rely upon United States Supreme Court precedent, its analysis properly addressed the relevant considerations for determining prosecutorial misconduct. The court also specifically applied the facts of the case in determining whether the prosecutor's comment was properly based on the evidence. Petitioner does not dispute the accuracy of the court's recitation of the facts, so he fails to overcome the presumption of correctness accorded that recitation. *See* 28 U.S.C. § 2254(e)(1); *Lancaster*, 324 F.3d at 429; *Bailey*, 271 F.3d at 656.

Upon review, the state court's conclusions that the prosecutor properly argued from the evidence, that the defense had invited the argument, that the comments did not undermine the fundamental fairness of the trial, and that any possible prejudice was cured by the court's instructions constituted entirely reasonable applications of the established Supreme Court precedent to the facts. *See Young*, 470 U.S. at 11-13 (reciting factors). Petitioner therefore fails to demonstrate that the state court's resolution of his prosecutorial misconduct claim "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Parker*, 132 S. Ct. at 2155.

### III. Grounds III & IV: Sentencing Issues

In his third ground for habeas relief, Petitioner argues that the trial court failed to articulate specific reasons to justify an upward departure from the sentencing guidelines range for the minimum sentence. In Ground IV, Petitioner contends that his rights under the Sixth and Fourteenth Amendments were violated by judicial factfinding that increased the floor of the permissible sentence, ostensibly in violation of *Alleyne v. United States*, 133 S. Ct. 2151 (2013).

#### A. Upward Departure

Claims concerning the improper scoring of sentencing guidelines are state-law claims and typically are not cognizable in habeas corpus proceedings. *See Hutto v. Davis*, 454 U.S. 370, 373-74 (1982) (federal courts normally do not review a sentence for a term of years that falls within the limits prescribed by the state legislature); *Austin v. Jackson*, 213 F.3d 298, 301-02 (6th Cir. 2000) (alleged violation of state law with respect to sentencing is not subject to federal habeas relief); *Cook v. Stegall*, 56 F. Supp. 2d 788, 797 (E.D. Mich. 1999) (the sentencing guidelines establish only rules of state law). There is no constitutional right to individualized sentencing. *Harmelin v.*

-14-

*Michigan*, 501 U.S. 957, 995 (1991); *United States v. Thomas*, 49 F.3d 253, 261 (6th Cir. 1995); *see also Lockett v. Ohio*, 438 U.S. 586, 604-05 (1978).  Moreover, a criminal defendant has "no federal constitutional right to be sentenced within Michigan's guideline minimum sentence recommendations."  *Doyle v. Scutt*, 347 F. Supp. 2d 474, 485 (E.D. Mich. 2004); *accord Austin v. Jackson*, 213 F.3d 298, 300 (6th Cir. 2000); *Lovely v. Jackson*, 337 F. Supp. 2d 969, 977 (E.D. Mich. 2004); *Thomas v. Foltz*, 654 F. Supp. 105, 106-07 (E.D. Mich. 1987).

Although state law errors generally are not reviewable in a federal habeas proceeding, an alleged violation of state law "could, potentially, 'be sufficiently egregious to amount to a denial of equal protection or of due process of law guaranteed by the Fourteenth Amendment.'"  *Bowling*, 344 F.3d at 521 (quoting *Pulley v. Harris*, 465 U.S. 37, 50 (1984)); *see also Doyle*, 347 F. Supp. 2d at 485 (a habeas court "will not set aside, on allegations of unfairness or an abuse of discretion, terms of a sentence that is within state statutory limits unless the sentence is so disproportionate to the crime as to be completely arbitrary and shocking.") (citation omitted).  A sentence may violate due process if it is based upon material "misinformation of constitutional magnitude."  *Roberts v. United States,* 445 U.S. 552, 556 (1980)); *see also United States v. Tucker,* 404 U.S. 443, 447 (1972); *Townsend v. Burke,* 334 U.S. 736, 741 (1948).  To prevail on such a claim, the petitioner must show (1) that the information before the sentencing court was materially false, and (2) that the court relied on the false information in imposing the sentence.  *Tucker*, 404 U.S. at 447; *United States v. Polselli*, 747 F.2d 356, 358 (6th Cir. 1984).   A sentencing court demonstrates actual reliance on misinformation when the court gives "explicit attention" to it, "found[s]" its sentence "at least in part" on it, or gives "specific consideration" to the information before imposing sentence.  *Tucker*, 404 U.S. at 447.

Petitioner's sentence clearly is neither arbitrary nor shocking, as the second-degree murder conviction carried a potential penalty up to life imprisonment. Further, although Petitioner claims that he had a right to be sentenced on the basis of accurate information, he describes no fact relied upon by the sentencing court that was false. Instead, Petitioner argues only that the upward departure was not authorized by state law, MICH. COMP. LAWS 769.34, because the trial court failed to articulate substantial and compelling reasons to justify the departure. *Id.; People v. Smith*, 754 N.W.2d 284 (2008). However, the Michigan Court of Appeals squarely determined that the trial court's upward departure from the guidelines was fully reasoned and supported under state law. It is not the province of a federal habeas court to re-examine state-law determinations on state-law questions. *Bradshaw*, 546 U.S. at 76; *Estelle*, 502 U.S. at 68 (1991). The decision of the state courts on a state-law issue is binding on a federal court. *See Wainwright v. Goode*, 464 U.S. 78, 84 (1983); *Stumpf v. Robinson*, 722 F.3d 739, 746 n.6 (6th Cir. 2013) ("[A] state court's interpretation of state law, including one announced on direct appeal of the challenged conviction, binds a federal court sitting in habeas corpus.'") (quoting *Bradshaw*, 546 U.S. at 76). Petitioner's sentencing claim therefore is not cognizable on habeas review. 28 U.S.C. § 2254(d).

B.    Judicial Factfinding

Petitioner argues that the trial court judge violated his Sixth Amendment right to a trial by jury by using, to enhance his sentence, facts that had not been admitted by Petitioner or found by a jury beyond a reasonable doubt. Petitioner bases his argument on the United States Supreme Court holding in *Alleyne v. United States*, 570 U.S. ___, 133 S. Ct. 2151 (2013), which in turn arose out of a series of United States Supreme Court sentencing decisions, beginning with *Blakely v. Washington*, 542 U.S. 296 (2004). *Blakely* concerned the State of Washington's determinate

sentencing system, which allowed a trial judge to elevate the maximum sentence permitted by law on the basis of facts not found by the jury but by the judge. Applying the Washington mandatory sentencing guidelines, the trial judge found facts that increased the maximum sentence faced by the defendant. The Supreme Court found that this scheme offended the Sixth Amendment, because any fact that increases or enhances a penalty for the crime beyond the prescribed statutory maximum for the offense must be submitted to the jury and proven beyond a reasonable doubt. *Blakely,* 542 U.S. at 301 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490 (2000)).

Unlike the State of Washington's determinate sentencing system at issue in *Blakely*, the State of Michigan has an indeterminate sentencing system in which the defendant is given a sentence with a minimum and a maximum term. The maximum sentence is not determined by the trial judge, but is set by law. *See People v. Drohan,* 715 N.W.2d 778, 789-91 (Mich. 2006) (citing MICH. COMP. LAWS § 769.8). Only the minimum sentence is based on the applicable sentencing guideline range. *Id.*; *and see People v. Babcock*, 666 N.W.2d 231, 236 n.7 (Mich. 2003) (citing MICH. COMP. LAWS § 769.34(2)). The Sixth Circuit authoritatively has held that the Michigan indeterminate sentencing system does not run afoul of *Blakely*. *See Chontos v. Berghuis*, 585 F.3d 1000, 1002 (6th Cir. 2009) (affirming district court's dismissal of prisoner's claim under *Blakely v. Washington* because it does not apply to Michigan's indeterminate sentencing scheme); *Tironi v. Birkett*, 252 F. App'x 724, 725 (6th Cir. 2007).

Subsequently, in *Alleyne*, 133 S. Ct. 2151, the Supreme Court held that the *Blakely* line of cases applies equally to mandatory minimum sentences. Shortly thereafter, the Michigan Court of Appeals concluded that *Alleyne* only prohibited judicial factfinding used to determine a mandatory minimum sentence, but had no impact on judicial factfinding in scoring the sentencing

guidelines producing a minimum range for an indeterminate sentence, the maximum of which is set by law. *See People v. Herron*, 845 N.W.2d 533, 539 (Mich. App. 2013). The Sixth Circuit also concluded that *Alleyne* did not decide the question whether judicial factfinding under Michigan's indeterminate sentencing scheme violated the Sixth Amendment. *See Kittka v. Franks*, 539 F. App'x 668, 673 (6th Cir. 2013). As a consequence, the Sixth Circuit held, the question is not a matter of clearly established Supreme Court precedent. *Id.* (citing *Montes v. Trombley*, 599 F.3d 490, 498 (6th Cir. 2010)); *see also Saccoccia v. Farley*, 573 F. App'x 483, 485 6th Cir. 2014) ("But *Alleyne* held only that 'facts that increase a mandatory *statutory* minimum [are] part of the substantive offense.'. . . It said nothing about guidelines sentencing factors . . . .") (quoting *Alleyne*, 133 S. Ct. at 2161 (emphasis added)).

Recently, however, in *People v. Lockridge*, 870 N.W.2d 502 (Mich. 2015), in a 5-2 decision, the Michigan Supreme Court held to the contrary. The court reasoned that, because the "guidelines *require* judicial fact-finding beyond facts admitted by the defendant or found by the jury to score offense variables (OVs) that *mandatorily* increase the floor of the guidelines minimum sentence range," they increase the "mandatory minimum" sentence under Alleyne. *Lockridge*, 870 N.W.2d at 506 (emphasis in original). As a consequence, the *Lockridge* court held that the mandatory application of Michigan's sentencing guidelines was unconstitutional, and the remedy was to make them advisory only. *Id.* at 520-21.[2]

---

[2]In the instant case, the Michigan Supreme Court held in abeyance Petitioner's application for leave to appeal pending the court's resolution of the *Lockridge* case. Following the issuance of *Lockridge*, the supreme court concluded that Petitioner had not made a threshold showing of plain error under *Lockridge*, and he therefore was not entitled to resentencing. *See People v. Hullihen*, No. 149625 (Mich. Oct. 28, 2015), http://publicdocs.courts.mi.gov/sct/public/orders/20151028_s149625_67_01_149625_2015-10-28_or.pdf.

The Michigan Supreme Court's decision in *Lockridge* does not render the result "clearly established" for purposes of habeas review. This Court may consider only the "clearly established" holdings of the United States Supreme Court. *Williams*, 529 U.S. at 412; *Bailey*, 271 F.3d at 655. In determining whether federal law is clearly established, the Court may not consider the decisions of lower federal courts. *Lopez*, 135 S. Ct. at 3; *Bailey*, 271 F.3d at 655. For the same reasons, it may not consider the holdings of the state courts. Instead, this Court may only grant relief on habeas review if the state court's application of clearly established federal law is "objectively unreasonable." *Id.* at 410. "[R]elief is available under § 2254(d)(1)'s unreasonable-application clause if, and only if, it is so obvious that a clearly established rule applies to a given set of facts that there could be no 'fairminded disagreement' on the question." *White*, 134 S. Ct. at 1706-07 (quoting *Harrington*, 562 U.S. at 103).

As is apparent from the reasoned decisions of the Michigan Court of Appeals in *Herron*, 845 N.W.2d at 539, and the Sixth Circuit in *Kittka*, 539 F. App'x at 673, and *Saccoccia*, 573 F. App'x at 485, as well as the decision of the dissenting justices in *Lockridge* itself, reasonable jurists could and did disagree about whether *Alleyne* applied to the calculation of Michigan's minimum sentencing guidelines. As a result, *Alleyne* did not clearly establish the unconstitutionality of the Michigan sentencing scheme. The state court's decision denying Petitioner's claim therefore was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent.

IV.     Ground V:  Ineffective Assistance of Trial Counsel

In his final ground on habeas review, Petitioner contends that trial counsel was ineffective in failing to object to the prosecutor's remark that Petitioner shot first and failing to object to the judicial factfinding at sentencing.

In *Strickland v. Washington*, 466 U.S. 668, 687-88 (1984), the Supreme Court established a two-prong test by which to evaluate claims of ineffective assistance of counsel.  To establish a claim of ineffective assistance of counsel, the petitioner must prove:  (1) that counsel's performance fell below an objective standard of reasonableness; and (2) that counsel's deficient performance prejudiced the defendant resulting in an unreliable or fundamentally unfair outcome. A court considering a claim of ineffective assistance must "indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." *Id.* at 689.  The defendant bears the burden of overcoming the presumption that the challenged action might be considered sound trial strategy.  *Id.* (citing *Michel v. Louisiana*, 350 U.S. 91, 101 (1955)); *see also Nagi v. United States*, 90 F.3d 130, 135 (6th Cir. 1996) (holding that counsel's strategic decisions were hard to attack).  The court must determine whether, in light of the circumstances as they existed at the time of counsel's actions, "the identified acts or omissions were outside the wide range of professionally competent assistance." *Strickland*, 466 U.S. at 690.  Even if a court determines that counsel's performance was outside that range, the defendant is not entitled to relief if counsel's error had no effect on the judgment.  *Id.* at 691.

Moreover, as the Supreme Court repeatedly has recognized, when a federal court reviews a state court's application of *Strickland* under § 2254(d), the deferential standard of *Strickland* is "doubly" deferential.  *Harrington*, 562 U.S. at 105 (citing *Knowles v. Mirzayance*, 556

-20-

U.S. 111, 123 (2009)); *see also Burt v. Titlow*, 134 S. Ct. 10, 13 (2013); *Cullen v. Pinholster*, 131 S. Ct. 1388, 1403 (2011); *Premo v. Moore*, 562 U.S. 115, 122 (2011).  In those circumstances, the question before the habeas court is "whether there is any reasonable argument that counsel satisfied *Strickland*'s deferential standard."  *Id.*; *Jackson v. Houk*, 687 F.3d 723, 740-41 (6th Cir. 2012) (stating that the "Supreme Court has recently again underlined the difficulty of prevailing on a *Strickland* claim in the context of habeas and AEDPA . . . .") (citing *Harrington*, 562 U.S. at 102).

Expressly applying the *Strickland* standard, the Michigan Court of Appeals held as follows:

Finally, defendant argues that his trial counsel was ineffective for failing to object to the prosecutor's false argument and in failing to object at sentencing.  To prove ineffective assistance, the defendant "must establish (1) the performance of his counsel was below an objective standard of reasonableness under prevailing professional norms and (2) a reasonable probability exists that, in the absence of counse's unprofessional errors, the outcome of the proceedings would have been different."  *People v. Sabin (On Second Remand)*, 242 Mich. App 656, 659; 620 NW2d 19 (2000), citing *Strickland v. Washington*, 466 U.S. 668; 104 S Ct 2052; 80 L.Ed.2d 674 (1984).  Defendant bears a heavy burden to overcome the presumption of effective assistance of counsel.  *People v. Dixon*, 263 Mich. App 393, 396; 688 NW2d 308 (2004).  Additionally, there is a "strong presumption that counsel's performance was sound trial strategy."  *Id.*

Defendant first contends that counsel was ineffective for failing to object to the prosecution's statement that defendant shot Woodworth first, on the ground that the argument improperly negated defendant's claim of self-defense.  Although defense counsel did not object immediately following the prosecution's statement, after the prosecution's closing argument, defense counsel moved for a mistrial, stating:

Two things, Judge.  One, I'm asking for a mistrial, as [the prosecution] is introducing evidence that was not presented.

[The prosecution] in his closing argument indicated that there was a—the first gunshot wound was to one of the victim's torso.  Not one single person testified to that.

The trial court declined to grant a mistrial, but indicated that it would give the curative instruction as described in Section III, above.

Defendant does not explain how defense counsel's actions were objectively unreasonable or prejudiced his case, especially in light of the fact that the only way the prosecution could "improperly" negate defendant's claim of self-defense was to argue facts not in evidence, as defendant in fact claims on appeal. Defense counsel's actions in fact resulted in a curative instruction that the jury would have to "decide what order shots may have occurred" and "how that scenario unfolded." Further, the prosecution's comments were proper; if defense counsel had phrased its objection in terms of the prosecution's "improper" negation of defendant's claim of self-defense, it would have been meritless.

Second, defendant asserts that counsel was ineffective at sentencing because he failed to object to judicial fact-finding which allegedly raised the mandatory minimum. However, this Court specifically rejected such an argument in *Herron*. Counsel cannot be faulted for failing to raise meritless objections. *People v. Fike*, 228 Mich. App 178, 182; 577 NW2d 903 (1998).

*Hullihen*, 2014 WL 2158149, at **6-7.

The court of appeals both reasonably and correctly applied the *Strickland* standard. The trial court held that, although counsel had did not object to the prosecutor's remarks, counsel instead argued for a mistrial based on those remarks. Petitioner makes no effort to dispute that claim. Moreover, given that the court gave a targeted instruction in response to the motion for mistrial, any further objection by counsel would have been meritless. Counsel's failure to make a frivolous or meritless motion does not constitute ineffective assistance of counsel. *See Smith v. Bradshaw*, 591 F.3d 517, 523 (6th Cir. 2010); *O'Hara v. Brigano*, 499 F.3d 492, 506 (6th Cir. 2007); *Chegwidden v. Kapture*, 92 F. App'x 309, 311 (6th Cir. 2004); *Harris v. United States*, 204 F.3d 681, 683 (6th Cir. 2000). Further, given the Petitioner received a curative instruction, any failure to make an objection rather than a motion for mistrial did not prejudice Petitioner. The state court's rejection of the claim was patently reasonable.

In addition, to the extent that counsel failed to object to judicial factfinding at sentencing, Petitioner cannot demonstrate that counsel was ineffective, given the law in existence at the time of the sentence. On March 1, 2013, when Petitioner was sentenced, the Michigan Supreme Court had squarely decided that *Blakely*, 542 U.S. 296, did not apply to the scoring of minimum sentencing guidelines in Michigan, *see Drohan,* 715 N.W.2d at 789-91, and the Sixth Circuit had agreed, *see Chontos v. Berghuis*, 585 F.3d at 1002. The *Alleyne* decision was not decided until three months after Petitioner was sentenced. As a consequence, applying the law as it existed at the time of sentencing, *see Strickland*, 466 U.S. at 690, Petitioner fails to overcome the strong presumption that counsel acted reasonably in failing to object that the judge had engaged in unconstitutional factfinding.

For these reasons, Petitioner fails to demonstrate that trial counsel was ineffective.

## Conclusion

In light of the foregoing, the Court will summarily dismiss Petitioner's application pursuant to Rule 4 because it fails to raise a meritorious federal claim.

## Certificate of Appealability

Under 28 U.S.C. § 2253(c)(2), the Court must determine whether a certificate of appealability should be granted. A certificate should issue if Petitioner has demonstrated a "substantial showing of a denial of a constitutional right." 28 U.S.C. § 2253(c)(2). This Court's dismissal of Petitioner's action under Rule 4 of the Rules Governing § 2254 Cases is a determination that the habeas action, on its face, lacks sufficient merit to warrant service. It would be highly unlikely for this Court to grant a certificate, thus indicating to the Sixth Circuit Court of Appeals that an issue merits review, when the Court has already determined that the action is so lacking in merit

that service is not warranted.  *See Love v. Butler*, 952 F.2d 10 (1st Cir. 1991) (it is "somewhat anomalous" for the court to summarily dismiss under Rule 4 and grant a certificate); *Hendricks v. Vasquez*, 908 F.2d 490 (9th Cir. 1990) (requiring reversal where court summarily dismissed under Rule 4 but granted certificate); *Dory v. Comm'r of Corr. of New York*, 865 F.2d 44, 46 (2d Cir. 1989) (it was "intrinsically contradictory" to grant a certificate when habeas action does not warrant service under Rule 4); *Williams v. Kullman*, 722 F.2d 1048, 1050 n.1 (2d Cir. 1983) (issuing certificate would be inconsistent with a summary dismissal).

The Sixth Circuit Court of Appeals has disapproved issuance of blanket denials of a certificate of appealability.  *Murphy v. Ohio*, 263 F.3d 466 (6th Cir. 2001).  Rather, the district court must "engage in a reasoned assessment of each claim" to determine whether a certificate is warranted.  *Id.* at 467.  Each issue must be considered under the standards set forth by the Supreme Court in *Slack v. McDaniel*, 529 U.S. 473 (2000).  *Murphy*, 263 F.3d at 467.  Consequently, this Court has examined each of Petitioner's claims under the *Slack* standard.  Under *Slack*, 529 U.S. at 484, to warrant a grant of the certificate, "[t]he petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong."  *Id.*  "A petitioner satisfies this standard by demonstrating that . . . jurists could conclude the issues presented are adequate to deserve encouragement to proceed further."  *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003).  In applying this standard, the Court may not conduct a full merits review, but must limit its examination to a threshold inquiry into the underlying merit of Petitioner's claims.  *Id.*

The Court finds that reasonable jurists could not conclude that this Court's dismissal of Petitioner's claims was debatable or wrong.  Therefore, the Court will deny Petitioner a certificate of appealability.

A Judgment and Order consistent with this Opinion will be entered.


Dated:   February 21, 2017                    /s/ Paul L. Maloney
                                              Paul L. Maloney
                                              United States District Judge